## KANE v STATE

Ohio Appeals, 6th Dist, Sandusky Co
No 227. Decided Oct. 13, 1930

R. A. Hunsinger, Fremont, for Kane.
F. H. Buckingham, Fremont, for State.

possession does not have to be possession in hand. Possession in law means having custody and control of a chattel, either singly or with others. It is also true that possession may be shown not only by the direct evidence of eye-witnesses, but it may also be shown by circumstantial evidence. It is also a well-established and settled principal of law in this state that where two or more persons enter into a conspiracy to commit a crime or an offense, that the act of one of the conspirators in furtherance of the conspiracy is the act of all, and if two or more persons enter into a conspiracy to violate the Crabbe Act, and in furtherance of that conspiracy one of them has possession of intoxicating liquor, such possession of one is the act of all engaged in the conspiracy. 8 O. Jur. 55. This court applied that principle in **Rudner vs. State of Ohio, 27 Oh Ap, 59.** In that case Rudner was convicted of murder in the second degree for the killing of Don R. Mellett and there was no evidence in the record tending to show his presence at the scene of the crime, or his participation in any way in the act of kililng, except as a co-conspirator who was absent at the time the crime was committed.

The trial court had before it the testimony of the sheriff and the defendant, and he had a right, in the exercise of his discretion, to believe the testimony of the sheriff. According to that testimony the defendant went to Dew Drop to get intoxicating liquor to transport to the Blue Front on West Third Street in Cleveland. This information was received by the sheriff from the defendant himself, according to the sheriff's testimony.

The evidence adduced by the state showed a plan to transport whiskey from Canada to Dew Drop by airplane, and part of it on to Cleveland. It is difficult to understand how the defendant could have been at Dew Drop at the psychological moment, without some previous arrangement with co-conspirators with reference to the shipment of this whiskey, and as it could not be brought into Sandusky County except in the possession of one of these conspirators, it follows that the court below was warranted in finding that the act of possessing liquor on the part of co-conspirators was the act of the defendant. The defendant, from his standpoint, claims in his testimony that he was innocent of any wrong, and that he merely, upon being requested, offered his assistance, on request of one of the parties, and if the court below had believed the de-

WILLIAMS, J.

There is no question that no eye witness testified that the defendant himself had actual manual possession of the liquor, but

fendant's testimoy, no doubt he would have discharged him. Of course, if the defendant innocently and without any intention of violating the law, merely assisted others in helping to get an automobile out which was stuck in the ice, it could under no circumstances make him guilty of a crime. The defendant made conflicting statements as to his whereabouts immediately before the alleged offense and in explaining his presence at Dew Drop. Considerable doubt was cast upon his testimony in this way. The testimony of the sheriff flatly contradicted that of the defendant in many particulars and gave rise to the inference of conspiracy as above stated. We have no hesitation in saying that the judgment of guilty pronounced by Judge Overmeyer, was such as was warranted, if he believed the testimony of the sheriff and did not believe the testimony of the defendant. The trial judge saw the witnesses testify and therefore had greater opportunity to form an accurate opinion as to their credibility, and we can not say that the decision and judgment are manifestly against the weight of the evidence.

The judgment will therefore be affirmed.

Richards, J, concurs.

Lloyd, J, dissents.

LLOYD, J., dissenting. I have nothing to add to the statement of the evidence contained in the majority opinion, except to suggest that the record shows that Kane was employed by The Ackerman Auto Supply Company in Cleveland, that during the war he served with the 311th Field Artillery and prior to February 17, 1930, had never been accused of, nor arrested on, any criminal charge.

It seems to me that there are no facts in evidence to support any theory of possession by Kane of any of the whiskey or of any ownership by him thereof, or of dominion or control thereover, nor any facts upon which any such inference can be predicated. And, without dominion or control over the whiskey, it must be admitted, I take it, that he was not in possession of any of it within the meaning of the statute upon which this prosecution is based. To suggest that he had theretofore conspired with the others there present to transport intoxicating liquors from Canada and with them was engaged therein, and that their possession of the whiskey in question thereby became his possession, to my mind is not only novel but quite incomprehensible, especially in view of the fact that he

is not charged with unlawful transportation of intoxicating liquor, nor with conspiracy with others to accomplish any unlawful purpose, and that there is no evidence that he had anything to do, directly or indirectly, with procuring or transporting the whiskey from wherever it was obtained to the place on the ice where the sheriff says he found it. Even if such assumed theory were tenable, a conspiracy,—a pre-arranged plan,—must antedate the overt act, and some evidence thereof, other than the overt act, must be produced. I fail to find any here.

Giving full credence to the testimony of the sheriff, that when he arrived Kane and three others were "around a Ford car" near which, on the ice, were twenty some cases of whiskey, and that thereafter Kane "admitted that he went to get a little liquor"; "he was going down there to get a load of liquor to take to the Blue Front on West Third Street in Cleveland" but that he found no liquor in Kane's possession, in his automobile or on his person, the fact remains that Kane obtained and had no whiskey, and so far as I am aware, unexecuted intentions have not yet been declared to constitute criminal acts. Assuming the facts to be as the sheriff testifies Kane told him they were, my guess would be that the proprietor of the "Blue Front" ordered or purchased some whiskey which he had been advised would be at the Bay Shore near Fremont on February 17th, and procured Kane to go there in his Oldsmobile to convey it to Cleveland. Because of the activities of the sheriff, Kane's mission failed.

As said in Brown vs. Volkenning, 64 N. Y., 76, 80:

"Possession means simply the owning or having a thing in one's own power."

Bouvier says that

"By the possession of a thing we always conceive the condition in which not only one's own dealing with the thing is physically possible, but every other person's dealing with it is capable of being excluded."

Violations of the prohibitory liquor laws merit punishment and no one is entitled to determine for himself what laws he will obey and what he will disregard, but rules of evidence do not change to fit particular cases. The legislature has not yet said that a person charged with the unlawful possession of intoxicating liquors is presumed guilty until he proves himself innocent. The burden of proof has not changed.

A verdict or finding, especially of guilty, in a criminal case, should be based not upon conjecture as to what must or might have been, but upon what is, as shown by the evidence.

In my opinion the evidence in the instant case, or rather, the want of evidence, requires not only a reversal of the judgment of the trial court but the discharge of the defendant.